UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ODYSSEY REINSURANCE | : | |
| COMPANY f/k/a ODYSSEY AMERICA | : | |
| REINSURANCE CORPORATION | : | CIVIL ACTION NO. |
| | : | 3:14-cv-00458-VAB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAL-REGENT INSURANCE SERVICES | : | AUGUST 20, 2015 |
| CORPORATION | : | |
| | : | |
| Defendant. | : | |

**RULING ON PLAINTIFF'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**I.     INTRODUCTION**

This diversity action arises out of a series of reinsurance agreements to which

Plaintiff Odyssey Reinsurance Company ("Odyssey"), Defendant Cal-Regent Insurance

Services Corporation ("Cal-Regent"), and State National Insurance Company, Inc.

("State National") were party.  Odyssey alleges that Cal-Regent failed to remit

commission adjustment payments to Odyssey, and now seeks summary judgment on

its breach of contract and declaratory judgment claims.  Cal-Regent maintains that

summary judgment is inappropriate because (i) Odyssey has not proved its own

performance, (ii) Odyssey incorrectly calculates a commission adjustment, and (iii) Cal-

Regent has not had a full and fair opportunity to conduct discovery into an alleged

possible breach by Odyssey.

Because the potential breach raised by Cal-Regent may raise a genuine dispute

of material fact, Odyssey's motion for summary judgment is DENIED WITHOUT

1

PREJUDICE TO RENEWAL.  On the limited grounds discussed in this Ruling, the Court will allow Cal-Regent an opportunity to amend its pleading to allege this potential breach properly.  Odyssey then will have an opportunity to renew its motion for summary judgment at the appropriate time.

## II.    FACTS

### A.    The Parties

Odyssey is a Connecticut corporation engaged in the business of reinsurance[1]. (Pl.'s L. R. 56(a)(1) Stmt. [hereinafter "Pl.'s Stmt."] ¶ 2, ECF No. 69; Def.'s L. R. 56(a)(2) Stmt. [hereinafter "Def.'s Stmt."] ¶ 2, ECF No. 72.)  Cal-Regent is a California corporation that underwrote commercial automobile and garage liability insurance on behalf of State National, an insurance company that is not a party to this action.  (Pl.'s Stmt. ¶ 7; Def.'s Stmt. ¶ 7; Nagby Aff.  ¶¶ 6-7, ECF No. 73.)  State National purchased reinsurance from Odyssey to reinsure a percentage of the risks that Cal-Regent underwrote on State National's behalf.  (Pl.'s Stmt. ¶ 7; Def.'s Stmt. ¶ 7.)

### B.    The Reinsurance Agreements

Odyssey, Cal-Regent, and State National first entered into the above-described arrangement under a Garage Liability Quota Share Reinsurance Agreement effective April 1, 2002 (the "2002 Agreement").  (Def.'s Mem. Opp. Summ. J. [hereinafter "Def.'s Opp."] Ex. 2 at 2, ECF No. 71-2.)  The parties terminated the 2002 Agreement effective April 1, 2004, and on that day entered into a second reinsurance agreement that was substantively the same as the 2002 Agreement (the "2004 Agreement").  (*Id.* at 23; Def.'s Opp. Ex. 3 [hereinafter "2004 Agmt."] at 2, ECF No. 71-3.)  Similarly, the parties

---

[1] Reinsurance is insurance for insurance companies.  *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 64 n.1 (2d Cir. 2012).  One insurance company, the reinsured, transfers all or part of a risk to another insurance company, the reinsurer.  *Id.*

terminated the 2004 Agreement effective April 1, 2006, and on that day entered into a third reinsurance agreement that was substantively the same as the 2002 and 2004 Agreements (the "2006 Agreement"). (2004 Agmt. at 25; Def.'s Opp. Ex. 4 [hereinafter "2006 Agmt."] at 2, ECF No. 71-4.) Finally, the parties terminated the 2006 Agreement effective April 1, 2007, and on that day entered into a fourth reinsurance agreement that was substantively the same as the 2002, 2004, and 2006 Agreements (the "2007 Agreement"). (Nagby Aff. ¶ 16; Def.'s Opp. Ex. 5 at 2, ECF No. 71-5.) The 2007 Agreement terminated effective July 13, 2009. (Def.'s Opp. Ex. 5 at 26.) Each of the four reinsurance agreements (collectively, the "Reinsurance Agreements") contained the following provisions that are relevant to this dispute.

### 1.   Commissions and Adjustments

Article XI provided that Cal-Regent would receive a provisional commission on all premiums that it underwrote on State National's behalf, and that Odyssey was responsible for paying its share of Cal-Regent's provisional commission directly to Cal-Regent. (2004 Agmt. ¶ 11.2.) Cal-Regent's provisional commission was adjusted for each "Underwriting Year" depending on the ratio of losses incurred to premiums earned ("loss ratio") for the business underwritten by Cal-Regent. (*Id.* ¶ 11.4.) "Underwriting Year" was defined:

> "Underwriting Year" as used herein shall mean those Policies with inception, renewal or anniversary date during each 12-month period commencing with each April 1 and all premium attributable to, and all loss arising out of such Policies from such inception, renewal or anniversary date until expiration, cancellation, or next anniversary, whichever occurs first, will be ascribed to the Underwriting Year.

(*Id.* ¶ 11.4(h).)

3

Cal-Regent's commission increased if the loss ratio for a given year fell below certain designated percentages, and decreased if the loss ratio exceeded certain designated percentages.  (*See id.* ¶ 11.4(a).)  Cal-Regent's commission was adjusted even further if the loss ratio for a given year fell outside the range of designated percentages.  (*See id.* ¶ 11.4(b).)  In that case, the difference in percentage points between the loss ratio and the highest or lowest (whatever the case may be) designated percentage was multiplied by premiums earned for the period, and the product was carried forward to the "next adjustment period" as a debit or credit (whatever the case may be) to "losses incurred" ("carry forward").  (*Id.*)  "Losses incurred" was defined to include:

> As respects second and each Underwriting Year hereunder, plus (minus) the debit (credit) from the preceding Underwriting Year . . . .

(*Id.* ¶ 11.4(f)(iii).)

As to the timing of commission calculations and payments, each agreement provided:

> [Cal-Regent] shall calculate and report the adjusted commission on ceded premiums within 60 days after 36 months[2] after the inception of the first Underwriting Year, and within 60 days after the end of each 12-month period thereafter until all losses subject hereto have been fully settled.  If the adjusted commission on ceded premiums earned is less than commissions previously allowed on premiums earned for the Agreement, [Cal-Regent] shall remit the difference to [Odyssey] and [State National] with its report."

(*Id.* ¶ 11.4(c).)

---

[2] This clause read differently in the 2002 Agreement, which provided that Cal-Regent was responsible for calculating and reporting its adjusted commission "within 60 days after <u>27</u> months after the inception of the first Underwriting Year . . . ."  (Def.'s Opp. Ex. 2 ¶ 11.4(c), ECF No. 71-2) (emphasis added).

### 2.    Survival

Article III provided for termination on a "run-off basis."  (*Id.* ¶ 3.7.)  Specifically, each agreement provided that when it terminated for any reason, reinsurance continued to apply to business in force at the time of termination, (*id.* ¶ 3.3), and that the parties were not "relieved of or released from any obligation created by or under this Agreement in relation to payment, expenses, reports, accounting or handling, which relate to outstanding insurance business under this Agreement existing on the date of termination," (*id.* ¶ 3.4).  Each agreement contained the following provision:

> This Agreement provides for termination on a run-off basis. The relevant provisions of this Agreement shall apply to the business being run off.  It is expressly agreed that the terms, conditions and obligations of the Preamble; Sections 3.3, 3.4, 3.6 and 3.7; Articles IV – XIX; Sections 20.2, 20.3, 20.5, 20.7, 20.8; and Articles XXI and XXII shall survive termination of this Agreement.

(*Id.* ¶ 3.7.)

### 3.    Loss Settlement

Paragraph 5.3 addressed loss settlement and provided in relevant part:

> [State National] hereby empowers [Odyssey], and [Odyssey] may, in its discretion, and under its supervision appoint [Cal-Regent], to accept notice of and investigate any claim arising under any of the Policies, to pay, adjust, settle, resist or compromise any such claim, unless [State National] specifically directs to the contrary with respect to any individual claim.  In the latter event, [Odyssey] and/or [Cal-Regent] shall follow the instructions of [State National] as respects such claim.  All such loss settlements, whether under strict Policy conditions or by the way of compromise, shall be unconditionally binding upon [Odyssey]. . . .

(*Id.* ¶ 5.3.)

### C.    The Parties' Performance

### 1.    Payment of Commissions and Commission Adjustments

On or about June 24, 2013, Cal-Regent, through an intermediary, sent Odyssey a report calculating the commission adjustments due from Cal-Regent to Odyssey for Underwriting Years 2003 through 2007 (the "Report").  (*See* Pl.'s Stmt. ¶ 24; Def.'s Stmt. ¶ 24.)  The Report indicated that commission adjustments were due as follows:

- $14,828.04 for Underwriting Year 2003;
- $83,861.36 for Underwriting Year 2004;
- $895,956.92 for Underwriting Year 2005;
- $453,733.65 for Underwriting Year 2006; and
- $246,581.44 for Underwriting Year 2007.

(Pl.'s Stmt. ¶ 25; Def.'s Stmt. ¶ 25; Razzaia Aff. Ex. 3.)

It is undisputed that for each of Underwriting Years 2003 through 2007, Cal-Regent's adjusted commission was less than commissions previously allowed.  (Pl.'s Stmt. ¶ 17; Def.'s Stmt. ¶ 17.)  Further, it is undisputed that Odyssey paid its share of Cal-Regent's provisional commissions directly to Cal-Regent for all relevant years. (Compl. ¶ 16; Ans. ¶ 16; Pl.'s Stmt. ¶ 16; Def.'s Stmt. ¶ 16.)  However, Cal-Regent has not paid Odyssey any commission adjustments.  (Pl.'s Stmt. ¶ 18; Def.'s Stmt. ¶ 18.)

Cal-Regent denies any obligation to pay commission adjustments on the ground that Odyssey has not proved its performance of all terms of the Reinsurance Agreements and, in particular, has not demonstrated its compliance with paragraph 5.3 in connection with the settlement of a particular claim, as discussed next.  (Def.'s Stmt. ¶ 35.)

## 2.    The Waldersen Claim

Cal-Regent alleges that it issued, on behalf of State National, a garage liability insurance policy to Sullivan Car Company, an Arizona-based car dealership.  (Nagby Aff. ¶ 20.)  The dealership owner's son and his passenger, Brian Waldersen, were

involved in an automobile accident in Mexico, and Waldersen sustained injury.  (*Id.* ¶ 21.)  Waldersen sued Sullivan Car Company, which sought coverage from State National.  (*Id.* ¶ 22.)  State National denied coverage.  (*Id.* ¶ 24.)  Sullivan Car Company and Waldersen entered into a consent judgment that included an assignment to Waldersen of any bad faith claim that Sullivan Car Company had against State National. (*Id.* ¶ 25.)  Waldersen brought a bad faith claim against State National (the "Waldersen Claim"), and that claim settled for $4,000,000.  (*Id.* ¶¶ 25, 27.)  Cal-Regent alleges that it did not participate in the settlement of the Waldersen Claim.  (*Id.* ¶¶ 26-27.)  Cal-Regent alleges that Odyssey may have participated in the settlement of the Waldersen Claim and thereby breached the loss settlement provision, paragraph 5.3, of the 2004 Agreement.  (*See id.* ¶ 30; Def.'s Opp. at 13.)

Cal-Regent attempted to take discovery into the question of whether Odyssey breached by settling the Waldersen Claim.  (Nagby Aff. ¶ 31.)  Specifically, Cal-Regent propounded production requests seeking documents concerning the decision to settle the Waldersen Claim, (Def.'s Opp. Ex. 6 at 10, ECF No. 71-6; Farrish Aff. ¶ 6, ECF No. 74), as well as interrogatories seeking identification of all State National personnel with whom Odyssey communicated regarding the Waldersen Claim, (Def.'s Opp. Ex. 7 at 17-18, ECF No. 71-7; Farrish Aff. ¶ 7).  On October 21, 2014, Odyssey objected to Cal-Regent's discovery requests concerning the Waldersen claim on the grounds that the Waldersen Claim was irrelevant to the litigation, that the requests were not likely to lead to the discovery of admissible evidence, and that the requests were overbroad and unduly burdensome.  (Def.'s Opp. Ex. 8 at 15, ECF No. 71-8; Def.'s Opp. Ex. 9 at 13; Farrish Aff. ¶¶ 8-9.)  The next day, Odyssey filed its motion for summary judgment.

### 3.    Commission Adjustment for Underwriting Year 2006

As a result of the settlement of the Waldersen Claim, the loss ratio for Underwriting Year 2005 exceeded the highest designated percentage under the 2004 Agreement.  (*See* Pl.'s Stmt. ¶¶ 26-27; Def.'s Stmt. ¶¶ 26-27.)  Odyssey argues that, as a result, further adjustment to Cal-Regent's provisional commission for Underwriting Year 2005 was required in the form of a debit carry forward to be applied to "losses incurred" for Underwriting Year 2006.  (Pl.'s Stmt. ¶¶ 28-29.)

Cal-Regent maintains that a debit carry forward from Underwriting Year 2005 cannot be applied to "losses incurred" for Underwriting Year 2006.  (Def.'s Stmt. ¶¶ 28-29.)  Accordingly, in its calculation of the commission adjustment for Underwriting Year 2006, the Report did not apply a debit carry forward from Underwriting Year 2005.  (Pl.'s Stmt. ¶ 25(c); Def.'s Stmt. ¶ 25(c).)  The Report indicated that the commission adjustment for Underwriting Year 2006 was $453,733.65.  (Pl.'s Stmt. ¶ 25(b); Def.'s Stmt. ¶ 25(b).)  Odyssey contends that the commission adjustment for Underwriting Year 2006, after taking into account a debit carry forward from Underwriting Year 2005, is $1,499,574.85.  (Pl.'s Stmt. ¶ 25(e).)

## III.    STANDARD OF REVIEW

The court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it "might affect the outcome of the suit under the governing law." *Id.* Disputes concerning immaterial facts do not prevent summary judgment. *See id.*; *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes."). When ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).

## IV.   DISCUSSION

### A.   Choice of Law

Each of the four Reinsurance Agreements provided that it "shall be interpreted in accordance with the laws of the State of Texas." (*E.g.*, 2004 Agmt. ¶ 19.2.) But that contractual choice is not determinative. *Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 607 (2d Cir. 1996). A federal court sitting in diversity must apply the choice of law provisions of the forum state to determine which state's law to apply. *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999).

Connecticut follows the Restatement (Second) of Conflict of Laws, which enforces choice of law provisions unless (i) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (ii) application of that state's law would contradict a fundamental

policy of a state that has a materially greater interest in the action and whose law would otherwise apply had it not been for the parties' choice. *Elgar v. Elgar*, 679 A.2d 937, 941-42 (Conn. 1996); Restatement (Second) of Conflict of Laws § 187 (1971).

Texas has a substantial relationship to the parties' transaction because the Reinsurance Agreements were each made and entered into in the state of Texas. (*E.g.*, 2004 Agmt. ¶ 20.1.) Further, application of Texas law would not contradict a fundamental policy of the state of Connecticut, whose law would apply but for the parties' choice. Accordingly, Texas law governs this dispute.

### B.    Single or Multiple Agreements

The parties' briefs make much of the question whether Odyssey, Cal-Regent, and State National entered into a single agreement or multiple agreements. Odyssey asserts that the parties entered into a single agreement effective from April 1, 2002 until July 13, 2009. (*See* Pl.'s Reply at 2, ECF No. 78.) Odyssey contends that the Court must accept the truth of that assertion because Cal-Regent admitted in its Answer that "the Reinsurance Agreement was in effect from its inception on April 1, 2002, until its termination on July 13, 2009." (*Id.*; Compl. ¶ 8; Ans. ¶ 8.)

It is true that "admissions in the pleadings are generally binding on the parties and the Court." *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 123 (2d Cir. 1984). However, "the parties may not create a case by stipulating to facts which do not really exist." *Id.*; *Sinicropi v. Milone*, 915 F.2d 66, 68 (2d Cir. 1990). A district court may disregard a stipulation if the evidence contrary to that stipulation is substantial. *PPX Enters., Inc.*, 746 F.2d at 123.

10

The Court does not read Cal-Regent's Answer to admit that there was only one agreement.  But even if Cal-Regent had stipulated to that, there is substantial contrary evidence in the record.  One need look no further than the termination addenda to each of the four Reinsurance Agreements, by which Odyssey, Cal-Regent, and State National agreed to terminate each agreement at 12:01 a.m. on the day that the next agreement became effective.  (*See* Def.'s Opp. Ex. 2 at 23-25, Ex. 3 at 25-26, Ex. 4 at 26-27, Ex. 5 at 26-27.)  The Court concludes that the parties entered into multiple agreements.

### C.   Commission Adjustments for Underwriting Years 2003, 2004, 2005, and 2007

Cal-Regent admits that the commission adjustments for Underwriting Years 2003, 2004, 2005, and 2007 are properly calculated as follows:

- $14,828.04 for Underwriting Year 2003;
- $83,861.36 for Underwriting Year 2004;
- $895,956.92 for Underwriting Year 2005; and
- $246,581.44 for Underwriting Year 2007.

(Pl.'s Stmt. ¶ 34; Def.'s Stmt. ¶ 34.)   Cal-Regent, however, denies any obligation to pay commission adjustments for any Underwriting Year on the ground that "Odyssey has not demonstrated its own performance of all of the terms of the Agreements, including *inter alia* the claims settlement provisions."  (Pl.'s Stmt. ¶ 35; Def.'s Stmt. ¶ 35.)  In particular, Cal-Regent argues that Odyssey has not demonstrated its compliance with paragraph 5.3 of the 2004 Agreement in connection with the settlement of the Waldersen Claim.  (Def.'s Opp. at 13.)

To prevail on a breach of contract claim under Texas law, a plaintiff must establish "(1) the existence of a valid contract; (2) performance or tendered

performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Virginia Oak Venture, LLC v. Fought*, 448 S.W.3d 179, 192 (Tex. App. 2014).  There is no question that the first, third, and fourth elements are satisfied here.  The parties entered into valid contracts, (*see* Pl.'s Stmt. ¶¶ 7-8; Def.'s Stmt. ¶¶ 7-8), Cal-Regent breached by failing to pay commission adjustments, (*see* Pl.'s Stmt. ¶ 18; Def.'s Stmt. ¶ 18), and Odyssey sustained damages as a result, (*see* Pl.'s Stmt. ¶¶ 16, 18; Def.'s Stmt. ¶¶ 16, 18).

As to the second element, it is undisputed that, for all relevant years, Odyssey paid its share of Cal-Regent's provisional commissions directly to Cal-Regent.  (Compl. ¶ 16; Ans. ¶ 16; Pl.'s Stmt. ¶ 16; Def.'s Stmt. ¶ 16.)  But Cal-Regent argues that Odyssey must show more.  Cal-Regent argues that Odyssey must prove that it performed "all of the terms of the contracts," (Def.'s Opp. at 12-13), including, "and without limitation . . . the claims settlement provisions," (Def.'s Stmt. ¶ 40).  Cal-Regent points out, correctly, that Odyssey has not submitted evidence of its performance of any obligations under the Reinsurance Agreements other than its obligation to pay its share of Cal-Regent's commissions.  (*See* Def.'s Opp. at 12.)  This argument is unavailing, however, because Fed. R. Civ. P. 9(c) relieves Odyssey of the burden of proving its performance of all terms of the Reinsurance Agreements, and instead places the burden on Cal-Regent to deny Odyssey's performance with particularity, which Cal-Regent failed to do.

### 1.    Rule 9(c) and Proof of Performance

Fed. R. Civ. P. 9(c) provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.  But

when denying that a condition precedent has occurred or been performed, a party must do so with particularity."  The rule grew out of the "advent of complex commercial and insurance contracts," when the burden of alleging in detail the performance of each condition precedent began to outweigh the value of such an enumeration.  5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1302 (3d ed. 2015). Thus, "for a contract claim, it is sufficient that the pleader . . . simply alleges that the claimant 'has performed all of its obligations as an insured under the [p]olicy,' or 'has at all times performed all its proper and legitimate duties and obligations under its contract.'"  2-9 James Wm. Moore et al., *Moore's Federal Practice* § 9.04[1] (Matthew Bender 3d ed. 2015).

In the Complaint, Odyssey alleged that "Odyssey Re has performed all of its obligations under the Reinsurance Agreement."  Compl. ¶ 40.  Courts within the Second Circuit have held that similar language constituted a sufficient allegation that all conditions precedent had been performed.  *E.g.*, *Internet Law Library, Inc. v. Southridge Capital Mgmt.*, LLC, 223 F. Supp. 2d 474, 490 (S.D.N.Y. 2002) ("It is no defense to argue, as the defendants have, that they are excused from performing their obligations under the agreement because a condition precedent has not occurred since Rule 9(c), F.R. Civ. P. requires no more than a general statement by a plaintiff that all conditions precedent have been satisfied to successfully make out a claim.  Plaintiffs have included such a statement in their Amended Consolidated Complaint, namely that '[ITIS] performed its obligations under [the] agreement.'") (alterations in original); *Ackerley Media Grp., Inc. v. Sharp Elecs. Corp.*, 170 F. Supp. 2d 445, 453 (S.D.N.Y. 2001) ("In its complaint [plaintiff] has pleaded that '[plaintiff] fully performed its obligations as

required by the contract for the 2000–2001 NBA season.' . . . That alone is sufficient for Rule 9(c) purposes.").

The Court concludes that Odyssey sufficiently alleged performance of all conditions precedent under Rule 9(c).  Accordingly, the burden shifted to Cal-Regent to deny that allegation "with particularity."  Fed. R. Civ. P. 9(c).  Cal-Regent answered as follows: "Cal-Regent denies the allegations contained in paragraph forty."  Ans. ¶ 40. That general denial was insufficient.[3]  *See E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 331 n.14 (5th Cir. 2012) (general denial that all conditions precedent had been satisfied was insufficient under Rule 9(c)); 2-9 James Wm. Moore et al., *Moore's Federal Practice* § 9.04[2] (Matthew Bender 3d ed. 2015) ("Certainly in an insurance claim case, a defendant would not meet the Rule 9(c) standards by alleging that not all conditions precedent were met.").

However, in its Local Rule 56(a)2 Statement responding to Odyssey's summary judgment motion, Cal-Regent did deny Odyssey's general allegation of performance with some particularity, noting that, "[i]n particular, and without limitation, Odyssey has not demonstrated its compliance with the claims settlement provisions of the Agreements" and citing paragraphs of its Local Rule 56(a)2 Statement summarizing the Waldersen Claim.  (Def.'s Stmt. ¶ 40.)  The "without limitation" language is insufficient to constitute a particularized denial and is thus rejected, but the reference to the Waldersen Claim passes muster.  It is absent, however, from Cal-Regent's operative

---

[3] Requesting an extension of time to file its Answer, Cal-Regent represented to the Court that "granting this Motion for Extension of Time will permit the filing of an answer that responds with specificity the [*sic*] allegations of plaintiff rather than an answer that merely leaves plaintiff to its burden of proof on amount allegedly owed."  ECF No. 28 ¶ 4.  Cal-Regent then filed its Answer denying, without specificity, Odyssey's allegation that it performed all of its obligations under the Reinsurance Agreements.  Ans. ¶ 40.

pleading – the Answer. "Rule 9's scope, by its very title ('Pleading Special Matters'), is limited to pleadings." *E.E.O.C.*, 679 F.3d at 333.

Failure to comply with Rule 9(c) in an operative pleading generally results in waiver. *See id.* at 331-33 (defendant's failure in its answer to deny with particularity that plaintiff performed condition precedent precluded defendant from relying on non-performance of that condition precedent at summary judgment); *Walton v. Nalco Chem. Co.*, 272 F.3d 13, 21 (1st Cir. 2001) ("[P]rovided the complaint includes a general averment that all conditions precedent to suit or recovery have been met, and the defendant does not deny the satisfaction of the preconditions specifically and with particularity, then the plaintiff's allegations are assumed admitted, and the defendant cannot later assert that a condition precedent has not been met.") (internal quotation marks and citation omitted); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1009 (11th Cir. 1982) ("If the party does not deny the satisfaction of the conditions precedent specifically and with particularity, however, the allegations are assumed admitted and cannot later be attacked."); *Ayres v. Baxter*, No. Civ. A. 3:99-CV-2641-L, 2001 WL 294224, at *4 (N.D. Tex. Mar. 27, 2001) (where defendants' answer did not deny with particularity performance of condition precedent and defendants "inexplicably have made no attempt to amend their pleading[,]" court held that issue was not preserved for trial, that "plaintiff's motion for summary judgment need not demonstrate the absence of a genuine issue of material fact, but need only state generally that conditions precedent have been satisfied[,]" and that there was no genuine issue of material fact as to whether plaintiffs performed condition precedent).

Courts within the Second Circuit, however, have been lenient.  Where defendants failed to deny with particularity in their pleadings the performance of conditions precedent, and raised particular failures of performance for the first time at summary judgment, courts in this Circuit have allowed defendants to amend their pleadings.  *See, e.g.*, *Pfizer, Inc. v. Stryker Corp.*, 348 F. Supp. 2d 131, 148-49 (S.D.N.Y. 2004) (where counterclaim defendant failed to deny with particularity counterclaimant's general allegation of performance under Rule 9(c), court construed counterclaim defendant's motion for summary judgment as motion to amend pleadings to add denial of performance, and permitted amendment).  In one case, the third-party defendant did not plead with particularity that the claimant failed to perform a condition precedent to payment, and the court confronted the issue of "whether the [third-party defendant] may assert the improperly-pleaded defense of non-performance as a ground for summary judgment."  *Int'l Paving Sys., Inc. v. Van-Tulco, Inc.*, 866 F. Supp. 682, 691 (E.D.N.Y. 1994).  The court noted the absence of Second Circuit authority "regarding the effect of the failure to comply with Rule 9(c) on a motion for summary judgment," but, finding guidance in the Second Circuit's decision in *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993), granted the third-party defendant's motion to amend its pleadings to add the particularized denial of performance.  *Van-Tulco, Inc.*, 866 F. Supp. at 691-92.

*Block* did not involve Rule 9(c).  In *Block*, the defendants failed to plead an affirmative defense as required under Fed. R. Civ. P. 8(c).  *Block*, 988 F.2d at 350.  The trial court construed the defendants' motion for summary judgment as a motion to amend their pleadings to add that affirmative defense, and permitted amendment citing

a lack of prejudice to the plaintiffs.  *Block v. First Blood Assocs.*, 763 F. Supp. 746, 748-50 (S.D.N.Y. 1991).  The Second Circuit affirmed, holding that the trial court did not abuse its discretion by granting leave to amend.  *Block*, 988 F.2d at 351.

Despite opportunities,[4] inquiries,[5] and suggestions,[6] Cal-Regent inexplicably has not moved to amend its Answer.  The question, therefore, is whether the Court should construe Cal-Regent's arguments in opposition to Odyssey's motion for summary judgment as a motion to amend its Answer to add a particularized denial of Odyssey's general allegation of performance, and, if the Court so construes, whether to permit amendment and to what extent.

The Second Circuit has not ruled as to whether and under what circumstances a district court should construe a party's arguments in opposition to summary judgment as a motion to amend that party's pleadings to add a particularized denial that the party failed to plead under Rule 9(c).  However, the Court finds *Block* instructive.  In light of the parties' awareness of the Waldersen Claim during discovery, Cal-Regent's particularized denial in its Local Rule 56(a)2 Statement, and Odyssey's multiple opportunities to respond thereto in its summary judgment briefing, and in keeping with the decisions of other courts within this Circuit, the Court will construe Cal-Regent's arguments as a motion to amend its Answer.

---

[4] Cal-Regent was permitted to amend its pleading once as a matter of course within 21 days after serving it, or with the Court's leave thereafter.  Fed. R. Civ. P. 15(a).

[5] According to Odyssey, Cal-Regent asked for Odyssey's consent to amend its Answer.  Odyssey declined, and Cal-Regent did not pursue the Court's leave to amend.  (ECF No. 78 at 4 n.2.)

[6] At oral argument, the Court suggested that Cal-Regent's argument pertaining to the Waldersen Claim may, under Texas law, be an affirmative defense that Cal-Regent had not pled.  (Tr. Oral Arg. Pl.'s Mot. Summ. Judg. at 52:1-5.)  Cal-Regent's counsel indicated that, if that were to be dispositive, Cal-Regent "would be constrained to seek a pleading amendment[.]"  (*Id.* at 52:18-19.)  The Court then queried what prejudice would result to Odyssey if Cal-Regent were to amend.  (*Id.* at 52:6-54:25.)

The Court should freely give leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2).  Reasons to deny leave include "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."  *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend."  *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981).

There is no evidence or reason to believe that Cal-Regent acted in bad faith or with a dilatory motive when it failed to amend, or seek leave to amend, its Answer.  As to undue prejudice, this Court must consider whether amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Block*, 988 F.2d at 350.  Applying these factors, the Court concludes that Odyssey will not be unduly prejudiced by a pleading amendment at this time.  The costs of conducting additional discovery into the Waldersen Claim, if necessary, will be minimal.  *See U.S. For & on Behalf of Mar. Admin. v. Cont'l Illinois Nat. Bank & Trust Co. of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.").  Moreover, this matter has not been pending long, and amendment will not significantly delay its resolution. Accordingly, the Court grants Cal-Regent leave to amend.

However, because the Waldersen Claim is the only denial of performance that Cal-Regent has advanced with any particularity, the Court grants Cal-Regent leave to amend its Answer to deny Odyssey's general allegation of performance only on the basis of the Waldersen Claim.  Moreover, Cal-Regent may plead the Waldersen Claim as a denial of performance *only if* Cal-Regent has a good faith basis for alleging that State National "specifically direct[ed]" with regard to the settlement of the Waldersen Claim and that Odyssey did not "follow the instructions of [State National] as respects such claim."  (2004 Agmt. ¶ 5.3.)  At oral argument, Cal-Regent advanced a novel reading of paragraph 5.3 of the 2004 Agreement with which the Court disagrees.  (See Tr. Oral Arg. Pl.'s Mot. Summ. Judg. at 33:17-39:9.)  Cal-Regent argued that once Odyssey appoints Cal-Regent under paragraph 5.3 to investigate and settle a claim, Odyssey may no longer participate in the handling of that claim.  (*See id.* at 36:17-39:9.)

As a matter of law, the Court rejects that reading because it finds no support in the plain language of paragraph 5.3, which states that Odyssey "may, in its discretion, and under its supervision" appoint Cal-Regent to handle claims.  (*Id.*)  *See SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (at summary judgment, court construes unambiguous contract as a matter of law).  Nothing in paragraph 5.3 suggests that Odyssey loses its power to supervise Cal-Regent or participate in the handling of a claim after it appoints Cal-Regent to investigate and settle that claim.  Indeed, the plain language compels the opposite conclusion.  To be clear, Cal-Regent does not have this Court's leave to assert the Waldersen Claim as a denial of performance or affirmative defense on the theory that Odyssey breached paragraph 5.3

by directing or participating in the settlement of the Waldersen claim absent specific direction from State National to the contrary.[7]

### 2.      Material Breach As Affirmative Defense

It appears under Texas law that a failure of performance on the part of a party claiming breach of contract may, in some cases, be insufficient to prevent recovery by that party.

Under Texas law, a plaintiff need not prove complete performance in every case. Texas courts recognize a party's right to proceed with a contract action even if he failed to perform in some respect.  *See Patel v. Ambassador Drycleaning Co.*, 86 S.W.3d 304, 306 (Tex. App. 2002) ("The rule of substantial performance allows one to go forward with a contract action even though he has breached nonmaterial terms of the contract but has substantially performed it."); *Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 395 (Tex. App. 2003) ("The term substantial performance always means something less than full and exact performance of the contract.").  Moreover, only a material breach excuses performance by the other party.  *Hanson Prod. Co. v. Americas Ins. Co.*, 108 F.3d 627, 630-31 (5th Cir. 1997) (applying Texas law and noting that "a material breach by one contracting party excuses performance by the other

---

[7] To be even clearer, the Court finds it highly unlikely that Cal-Regent can raise a genuine dispute as to whether State National expressly told Odyssey not to assist in the settlement of the Waldersen Claim. Given the affidavit submitted by Cal-Regent Chief Executive Officer Richard K. Nagby, it is clear that State National not only was aware of the Waldersen Claim and the possibility that it might settle, but also had initially invited Cal-Regent to attend the mediation for the Waldersen Claim with State National and Odyssey, before Cal-Regent was disinvited.  Nagby Aff. ¶¶ 26.  Since the Waldersen Claim was brought against State National, it is reasonable to assume that State National authorized its resolution. Nevertheless, consistent with the applicable case law, the Court will provide Cal-Regent an opportunity to amend its pleading, if it has a good-faith basis for doing so.  In the Court's view, Cal-Regent's claim only could be sustained with either documentary or testamentary evidence from State National showing that it specifically directed Odyssey with regard to the Waldersen Claim and Odyssey disobeyed.  As implausible as that sounds, given the fact that State National allowed and apparently participated in the settlement, Cal-Regent is free to pursue this argument, if it can.  Obviously, if Cal-Regent ultimately does not have a good faith basis for pursuing this argument any further, the law provides the Court with ample means to address the issue.  *See, e.g.*, Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

party, and an immaterial breach does not[.]"); *Myriad Dev., Inc. v. Alltech, Inc.*, 817 F. Supp. 2d 946, 963-64 (W.D. Tex. 2011) ("[W]hen a breach is immaterial, the nonbreaching party is not excused from future performance and may sue only for the damages caused by the breach").

"[T]he contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded." *Compass Bank v. MFP Fin. Servs., Inc.*, 152 S.W.3d 844, 852 (Tex. App. 2005); *see also Park v. Payne*, 381 S.W.3d 615, 618 (Tex. App. 2012) ("Material breach is an affirmative defense to breach of contract and, as such, must be pleaded."); *cf. Howell v. Kelly*, 534 S.W.2d 737, 740 (Tex. Civ. App. 1976) ("The burden of proving the happening of a contingency which, by the terms of the contract, would discharge the party from liability, or any default or refusal to perform on the part of the plaintiff that would excuse the performance by the defendant, is on the party who seeks to avoid the contract or excuse a failure to perform it on that ground.").

Cal-Regent failed to plead material breach as an affirmative defense. Rule 8(c) requires a party to "affirmatively state any avoidance or affirmative defense" when responding to a pleading. Fed. R. Civ. P. 8(c). "The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d ed. 2015) ("It is a frequently stated proposition of virtually universal acceptance by the federal courts that a failure to plead an affirmative defense as required by Federal Rule 8(c) results in the waiver of that defense and its exclusion from the case[.]"); *Koukhtiev v. Hiner*, No. 01-

13-00356-CV, 2014 WL 4952430, at *4 (Tex. App. Oct. 2, 2014) ("[W]hen a party contends that his breach of a contract is excused by another party's breach or repudiation of the agreement, these affirmative defenses are waived if they are not pleaded or tried by consent."); *Hoffman v. AmericaHomeKey, Inc.*, No. 3:12-CV-3806-B, 2014 WL 7272596, at *6 (N.D. Tex. Dec. 22, 2014) (defendant waived affirmative defense of material breach because it did not assert that defense as to a particular contract provision until summary judgment and plaintiff did not have opportunity to conduct discovery as to that defense).

The Second Circuit has recognized an exception, however, "where the defense is raised at the first pragmatically possible time and applying it at that time would not unfairly prejudice the opposing party." *Am. Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 897, 910 (2d Cir. 1998). Thus, "a district court may still entertain [unpleaded] affirmative defenses at the summary judgment stage in the absence of undue prejudice to the plaintiff, bad faith or dilatory motive on the part of the defendant, futility, or undue delay of the proceedings." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003); *see also Block*, 988 F.2d at 351.

For the same reasons that it gives Cal-Regent leave to amend in order to comply with Rule 9(c), the Court grants Cal-Regent leave to amend its Answer to plead material breach as an affirmative defense. As stated above, however, Cal-Regent may assert such affirmative defense only on the basis of the Waldersen Claim, and only if it has a good faith basis for alleging that State National "specifically direct[ed]" with regard to the settlement of the Waldersen Claim and that Odyssey did not "follow the instructions of [State National] as respects such claim." (2004 Agmt. ¶ 5.3.).

22

Cal-Regent may file an amended answer within fourteen (14) days of the date of this Ruling. Because the Waldersen Claim, if pursued on the grounds permitted by this Ruling, may raise a genuine dispute of material fact, the Court will deny this motion for summary judgment without prejudice to renewal. If Odyssey renews its motion for summary judgment, the parties may rely, in whole or in part, on any papers submitted in connection with this motion.

### D.     Commission Adjustment for Underwriting Year 2006

The calculation of the commission adjustment for Underwriting Year 2006 depends in part on whether a debit carry forward from Underwriting Year 2005 can be applied to "losses incurred" for Underwriting Year 2006. The Court is prepared to address this question quickly in connection with Odyssey's renewed motion for summary judgment.[8]

## V.     CONCLUSION

For the foregoing reasons, Odyssey's Motion for Summary Judgment (ECF No. 57) is hereby DENIED WITHOUT PREJUDICE. Cal-Regent may amend its Answer within fourteen (14) days of the date of this Ruling, consistent with the terms hereof.


SO ORDERED at Bridgeport, Connecticut this twentieth day of August, 2015.


 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[8] If the Court renders judgment in Odyssey's favor on a renewed motion for summary judgment, then at that time the Court will also address Odyssey's claims for prejudgment interest, attorneys' fees, and costs.