UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ODYSSEY REINSURANCE | : | |
| COMPANY f/k/a ODYSSEY AMERICA | : | |
| REINSURANCE CORPORATION | : | CIVIL ACTION NO. |
| | : | 3:14-cv-00458-VAB |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CAL-REGENT INSURANCE SERVICES | : | OCTOBER 14, 2015 |
| CORPORATION | : | |
| | : | |
| Defendant. | : | |

**RULING ON PLAINTIFF'S**
**RENEWED MOTION FOR SUMMARY JUDGMENT**

**I.     INTRODUCTION**

Plaintiff, Odyssey Reinsurance Company ("Odyssey"), brought this diversity

action against Defendant, Cal-Regent Insurance Services Corporation ("Cal-Regent"),

seeking a declaratory judgment that Cal-Regent breached reinsurance agreements, and

damages.  In a ruling dated August 20, 2015 (the "August Ruling"), the Court denied

without prejudice Odyssey's first motion for summary judgment and allowed Cal-Regent

fourteen days to amend its Answer to deny with particularity Odyssey's allegation that it

had performed all of its obligations under the reinsurance agreements.  ECF No. 100 at

23.  Cal-Regent did not amend its Answer, and Odyssey renewed its motion for

summary judgment.  For the reasons stated herein, Odyssey's renewed motion for

summary judgment is GRANTED.

1

II.     **FACTS**

The Court presumes familiarity with the undisputed facts, which are set forth in the August Ruling.  ECF No. 100 at 2-8.  The Court adopts the defined terms used in the August Ruling.

III.    **STANDARD OF REVIEW**

The court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  "[T]he moving party bears the burden of showing that he or she is entitled to summary judgment."  *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  Once the moving party has satisfied that burden, in order to defeat the motion, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  Disputes concerning immaterial facts do not prevent summary judgment.  *See id.*; *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes.").  When ruling on a motion for summary judgment, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.  *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).

**IV.    DISCUSSION**

**A.    Liability**

As explained in the August Ruling, Odyssey's claim for breach of contract is governed by Texas law.  ECF No. 100 at 9-10.  To prevail on a breach of contract claim under Texas law, a plaintiff must establish "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Virginia Oak Venture, LLC v. Fought*, 448 S.W.3d 179, 192 (Tex. App. 2014).  All four elements are satisfied here.

First, there is no genuine dispute that the parties entered into a series of valid reinsurance agreements.  (*See* Pl.'s Stmt. ¶¶ 7-8; Def.'s Stmt. ¶¶ 7-8.)

Second, Odyssey alleged in its Complaint that "Odyssey Re has performed all of its obligations under the Reinsurance Agreement."  Compl. ¶ 40.  As explained in the August Ruling, Federal Rule of Civil Procedure 9(c) placed the burden on Cal-Regent to deny that allegation with particularity in its Answer, and Cal-Regent failed to do so.  ECF No. 100 at 12-20.  The Court gave Cal-Regent limited leave to amend its Answer, but Cal-Regent chose not to do so.  As a result, Odyssey's allegation is deemed admitted. *See Walton v. Nalco Chem. Co.*, 272 F.3d 13, 21 (1st Cir. 2001) ("[P]rovided the complaint includes a general averment that all conditions precedent to suit or recovery have been met, and the defendant does not deny the satisfaction of the preconditions specifically and with particularity, then the plaintiff's allegations are assumed admitted, and the defendant cannot later assert that a condition precedent has not been met.") (internal quotation marks and citation omitted); *Jackson v. Seaboard Coast Line R. Co.*,

678 F.2d 992, 1009 (11th Cir. 1982) ("If the party does not deny the satisfaction of the conditions precedent specifically and with particularity, however, the allegations are assumed admitted and cannot later be attacked."); *see also E.E.O.C. v. Serv. Temps Inc.*, 679 F.3d 323, 331-33 & n.14 (5th Cir. 2012) (defendant's failure in its answer to deny with particularity that plaintiff performed condition precedent precluded defendant from relying on non-performance of that condition precedent at summary judgment); *Ayres v. Baxter*, No. Civ. A. 3:99-CV-2641-L, 2001 WL 294224, at *4 (N.D. Tex. Mar. 27, 2001) (where defendants' answer did not deny with particularity performance of condition precedent and defendants "inexplicably have made no attempt to amend their pleading[,]" court held that issue was not preserved for trial, that "plaintiff's motion for summary judgment need not demonstrate the absence of a genuine issue of material fact, but need only state generally that conditions precedent have been satisfied[,]" and that there was no genuine issue of material fact as to whether plaintiffs performed condition precedent).  Therefore, there is no genuine dispute that Odyssey performed all of its obligations under the Reinsurance Agreements.

Third, there is no genuine dispute that Cal-Regent breached by failing to pay commission adjustments to Odyssey. (*See* Pl.'s Stmt. ¶ 18; Def.'s Stmt. ¶ 18; 2004 Agmt ¶ 11.4(c).)

Fourth, there is no genuine dispute that Odyssey sustained damages as a result of Cal-Regent's breach.  (*See* Pl.'s Stmt. ¶¶ 16, 18; Def.'s Stmt. ¶¶ 16, 18.)

No genuine dispute of material fact exists as to Odyssey's claims for breach of contract and declaratory judgment, and Odyssey is entitled to judgment as a matter of law under Fed. R. Civ. P. 56(a).

**B.     Damages**

**1.     Commission Adjustments for Underwriting Years 2003, 2004, 2005, and 2007**

The commission adjustments due for Underwriting Years 2003, 2004, 2005, and 2007 are as follows:

- $14,828.04 for Underwriting Year 2003;
- $83,861.36 for Underwriting Year 2004;
- $895,956.92 for Underwriting Year 2005; and
- $246,581.44 for Underwriting Year 2007.

(Pl.'s Stmt. ¶ 34; Def.'s Stmt. ¶ 34.)

Accordingly, judgment shall enter in Odyssey's favor as to Underwriting Years 2003, 2004, 2005, and 2007 in the amount of $1,241,227.76.

**2.     Commission Adjustment for Underwriting Year 2006**

As to Underwriting Year 2006, the amount that Cal-Regent owes Odyssey in commission adjustment depends in part on whether a debit carry forward from Underwriting Year 2005 can be applied to "losses incurred" for Underwriting Year 2006. Cal-Regent maintains that a debit carry forward cannot be applied, (Def.'s Stmt. ¶¶ 28-29), and that the commission adjustment for Underwriting Year 2006 is $453,733.65, (Pl.'s Stmt. ¶ 25(b); Def.'s Stmt. ¶ 25(b)).  Odyssey contends that a debit carry forward must be applied, and has provided evidence showing that the commission adjustment for Underwriting Year 2006, after applying the debit carry forward, is $1,499,574.85. Razzaia Aff. ¶¶ 5-9, 16, ECF No. 61; Razzaia Aff., Ex. 1 at 4, ECF No. 61-1; Razzaia Aff., Ex. 2 at 1, 83, ECF No. 61-2.

Cal-Regent has not submitted any evidence to counter Odyssey's calculation of the Underwriting Year 2006 commission adjustment if a debit carry forward is applied.

Therefore, if a debit carry forward does apply, there is no genuine dispute that $1,499,574.85 is due. *E.g.*, *Dataserv, Ltd. v. Mgmt. Techs., Inc.*, No. 90 CIV. 7759 (SWK), 1993 WL 138852, at *3 (S.D.N.Y. Apr. 27, 1993) ("[A]lthough [the defendant] denies the amount claimed by [the plaintiff] under the Leases, [the defendant] adduces no evidence to controvert the amount claimed and therefore, fails to raise a genuine issue of fact with respect to [the plaintiff's] damages."); *Emanuel v. Barry*, No. CV-83-810, 1990 WL 172681, at *2 (E.D.N.Y. Oct. 25, 1990) (granting summary judgment as to the amount of damages where plaintiffs submitted evidence of damages and defendant offered no evidence to contradict plaintiffs' figures).

The Court concludes that the 2004 Agreement requires that the debit carry forward from Underwriting Year 2005 be applied to "losses incurred" for Underwriting Year 2006.

In Texas, insurance contracts are interpreted according to the general rules of contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). As a result, this Court "must give effect to all contractual provisions so that none will be rendered meaningless." *Id.* If contract language can be given a certain or definite meaning, it is not ambiguous and is construed as a matter of law. *Id.* "An ambiguity does not arise simply because the parties offer conflicting interpretations." *Id.* "[A]n ambiguity exists only if the contract is susceptible to two or more reasonable interpretations." *Id.* Following these principles, the Court reaches the following conclusions.

First, the 2004 Agreement applied for purposes of calculating the adjusted commission for Underwriting Year 2005. (*See* Pl.'s Stmt. ¶ 28; Def.'s Stmt. ¶ 28.)

Second, the 2004 Agreement provided that, for purposes of calculating an adjusted commission, if the loss ratio for an Underwriting Year exceeded 66.5%, then the difference in percentage points between the loss ratio and 66.5% must be multiplied by premiums earned for the period, and the product must be carried forward to the "next adjustment period as a debit (additional) to losses incurred." (2004 Agmt. ¶ 11.4(b).) It is undisputed that the loss ratio for Underwriting Year 2005 exceeded 66.5%. (Pl.'s Stmt. ¶¶ 26-27; Def.'s Stmt. ¶¶ 26-27.) Therefore, the difference in percentage points between the loss ratio for Underwriting Year 2005 and 66.5% must be multiplied by premiums earned for the period, and the product must be carried forward to the "next adjustment period as a debit (additional) to losses incurred." (2004 Agmt. ¶ 11.4(b).)

Third, the Court must give meaning to the phrase "next adjustment period." *Schaefer*, 124 S.W.3d at 157. The 2004 Agreement does not define "adjustment period," but the Court can see no meaning for that term other than "Underwriting Year," because the agreement required that commissions "be adjusted for each Underwriting Year." (2004 Agmt. ¶ 11.4.) The parties agree that "adjustment period" means "Underwriting Year." (*See* Def.'s Suppl. Br. at 5, ECF No. 91; Pl.'s Reply Mem. at 2, ECF No. 92.)

Thus, for purposes of calculating the commission adjustment for Underwriting Year 2005, "next adjustment period" meant Underwriting Year 2006. Therefore, the difference in percentage points between the loss ratio for Underwriting Year 2005 and 66.5% must be multiplied by premiums earned for the period, and the product must be carried forward to Underwriting Year 2006 as a debit to "losses incurred." (*See* 2004 Agmt. ¶ 11.4(b).)

Cal-Regent argues that there is no "next adjustment period" when an agreement is terminated.  (*See* Def.'s Suppl. Br. at 5, ECF No. 91.)  However, that reading would render meaningless the survival provision, paragraph 3.7, as it relates to the carry forward provision, paragraph 11.4(b), of the 2004 Agreement.  *Schaefer*, 124 S.W.3d at 157 ("[W]e must give effect to all contractual provisions so that none will be rendered meaningless").  Because the carry forward provision survived termination, the debit carry forward from Underwriting Year 2005 must be carried forward to Underwriting Year 2006 as a debit to "losses incurred" despite the termination of the 2004 Agreement.

Cal-Regent also argues that the survival provision applied only with respect to so-called run-off business, such as post-termination investigation and/or defense of claims made under policies issued before termination.  (Def.'s Suppl. Br. at 5).  That argument is not persuasive.  The survival provision in the 2004 Agreement expressly provided that Article XI – which included the commission calculation and adjustment provisions – survived termination, and did not exclude the carry forward provision.  (2004 Agmt. ¶ 3.7.)

Fourth, the definition of "losses incurred" contemplates carry forwards.  "Losses incurred" includes, "[a]s respects second and each subsequent Underwriting Year hereunder, plus (minus) the debit (credit) from the preceding Underwriting Year."[1]  (*Id.* ¶ 11.4(f)(iv).)

---

[1] The 2006 Agreement's definition of "losses incurred" likewise only allows carry forwards to be applied to the "second and each subsequent Underwriting Year hereunder."  (2006 Agmt. ¶ 11.4(f)(iii).) Underwriting Year 2006 is the first Underwriting Year under the 2006 Agreement.  Therefore, a carry forward cannot be applied to "losses incurred" for Underwriting Year 2006 under the 2006 Agreement.  However, the 2006 Agreement does not apply for purposes of this analysis because the carry forward in question arose under the 2004 Agreement.

The Court must give meaning to the word "hereunder" as it appears in the definition of "losses incurred."  *See Schaefer*, 124 S.W.3d at 157.  The 2004 Agreement does not define "hereunder."  Black's Law Dictionary defines "hereunder" as "[l]ater in this document . . . In accordance with this document."  *Black's Law Dictionary* 844 (10th ed. 2014).  Likewise, the term's other appearances in the 2004 Agreement suggest that "hereunder" means "under this agreement."  (*See, e.g.*, 2004 Agmt. ¶ 3.3 ("When this Agreement terminates for any reason, reinsurance hereunder shall continue to apply to the business in force at the time and date of termination").)  The Court concludes that "hereunder," as it appears in the definition of "losses incurred," means "under this agreement."[2]

Cal-Regent argues that Underwriting Year 2006 is not an Underwriting Year "hereunder" as to the 2004 Agreement because Underwriting Year 2006 began on April 1, 2006, the date on which the 2004 Agreement terminated.  (*See* Def.'s Suppl. Br. at 6, ECF No. 91; Tr. Oral Arg. Pl.'s Mot. Summ. Judg. at 28:17-29:5, ECF No. 95.)  Cal-Regent's argument essentially defines "Underwriting Year hereunder" as a twelve-month period encompassed within the effective period of the relevant agreement.  Per Cal-Regent's argument, Underwriting Year 2006 was not an Underwriting Year "under" the 2004 Agreement because its period, April 1, 2006 to April 1, 2007, was outside of the effective period of the 2004 Agreement, April 1, 2004 to April 1, 2006.

---

[2] Courts generally interpret "hereunder" the same way.  *See, e.g.*, *Onadeko v. Rainier Credit Co.*, 678 F.2d 113, 115 (9th Cir. 1982) (loan document's use of "hereunder" made it clear that collateral secured only indebtedness arising out of the loan); *Grizzard Commc'ns Grp. v. Monk*, No. 4:05 CV 3182, 2005 WL 2563046, at *6 (D. Neb. Oct. 11, 2005) ("hereunder" as used in employment agreement meant "under the employment agreement," consistent with term's dictionary definition of "under this written statement . . . under this agreement: in accordance with the terms of this document").

"Underwriting Year," however, is defined as "those Policies with inception, renewal or anniversary date during each 12-month period commencing with each April 1 and all premium attributable to, and all loss arising out of such Policies from such inception, renewal or anniversary date until expiration, cancellation, or next anniversary, whichever occurs first, will be ascribed to the Underwriting Year."  (2004 Agmt. ¶ 11.4(h).)  As a result, each twelve-month period commencing after April 1, 2004 is an Underwriting Year under the 2004 Agreement to the extent that policies covered by the 2004 Agreement have inception, renewal, or anniversary dates during that period.  Thus, the period April 1, 2006 to April 1, 2007 was an Underwriting Year under the 2004 Agreement, to the extent that policies covered by the 2004 Agreement had inception, renewal, or anniversary dates during that period.  If, during that period, premiums and losses arose out of policies covered by the 2004 Agreement, and those policies did not expire or cancel before their anniversary dates occurring within that period, then those premiums and losses were attributable to that Underwriting Year, Underwriting Year 2006.  The debit carry forward from Underwriting Year 2005, which also arose out of the 2004 Agreement and survived its termination, is added to any losses attributable to Underwriting Year 2006.

This reading of the 2004 Agreement is consistent with the parties' arrangement: Odyssey was responsible for paying its share of Cal-Regent's provisional commission, (2004 Agmt. ¶ 11.2), and Cal-Regent's provisional commission was to be adjusted for each Underwriting Year depending on the loss ratio for the business underwritten by Cal-Regent.  (*Id.* ¶ 11.4.).  In the event that the parties' agreement terminated, the survival provision ensured that Cal-Regent would still collect provisional commissions,

and Odyssey would still receive adjustments of those commissions, including by carry forward, if significant losses arose out of policies covered by the terminated agreement. (*Id.* ¶ 3.7.)  Significant losses arose out of a policy covered by the terminated 2004 Agreement, and Cal-Regent is seeking to retain its provisional commission without proper adjustment, denying Odyssey the benefit of its bargain.

As discussed *supra*, Odyssey has provided evidence showing that the commission adjustment for Underwriting Year 2006 after applying the debit carry forward is $1,499,574.85, and Cal-Regent has not raised a genuine dispute as to that question.  Accordingly, judgment shall enter in Odyssey's favor as to Underwriting Year 2006 in the amount of $1,499,574.85.

### C.     Prejudgment Interest, Attorneys' Fees, and Costs

Odyssey seeks attorneys' fees, costs, and prejudgment interest "at the Connecticut statutory rate of 10%."  (Pl.'s Mem. Law Supp. Mot. Summ. Judg. at 17, ECF No. 57; *accord* Compl. at 8, ECF No. 1.)

### 1.     Prejudgment Interest

"The awarding of prejudgment interest is considered a question of substantive law."  *Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999); *Country Club Assocs. LLC v. Shaw's Supermarkets, Inc.*, No. 06-cv-0491 (JCH), 2009 WL 1537952, at *34 (D. Conn. May 29, 2009) ("In diversity cases, an award of prejudgment interest is a substantive aspect of the remedy.  Therefore, the district court first looks to the substantive law of Connecticut, including Connecticut's choice of law principles, to determine which law to apply.") *amended*, 643 F. Supp. 2d 243 (D. Conn. 2009). Having already applied Connecticut's choice of law principles and determined that the

substantive law of Texas applies in this case, (ECF No. 100 at 9-10), the Court will apply Texas law in adjudging Odyssey's request for prejudgment interest. *See Valley Juice Ltd., Inc. v. Evian Waters of France, Inc.*, 87 F.3d 604, 614 (2d Cir. 1996) (under Connecticut choice-of-law principles, parties' contractual choice of New York law to govern their agreement also determined applicable prejudgment interest statute).

Prejudgment interest is "compensation allowed by law as additional damages for lost use of the money due as damages during the lapse of time between the accrual of the claim and the date of judgment." *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (quoting *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985)).

In Texas, statutory prejudgment interest applies only to cases involving wrongful death, personal injury, property damage, and condemnation. Tex. Fin. Code §§ 304.102, 304.201. However, Texas common law allows for prejudgment interest in breach of contract cases at the same rate as postjudgment interest. *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002) (citing *Kenneco*, 962 S.W.2d at 532). The current Texas postjudgment interest rate is 5% because the current Federal Reserve prime rate is less than 5%. *See* Tex. Fin. Code § 304.003. Prejudgment interest is computed as simple interest, not compounding. Tex. Fin. Code § 304.104; *Kenneco*, 962 S.W.2d at 532.

Because there is no Texas statute authorizing prejudgment interest in a breach of contract case, the Court has discretion to award prejudgment interest. *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 487 (Tex. App. 2004) ("Where no statute controls the award of prejudgment interest, the decision to award prejudgment interest

12

is left to the sound discretion of the trial court, which should rely upon equitable principles and public policy in making this decision.").

An award of prejudgment interest is appropriate in this case.  Odyssey paid its share of Cal-Regent's provisional commissions under the Reinsurance Agreements. Cal-Regent withheld adjustments of those commissions for years claiming a possible breach by Odyssey.  That claim, however, was not supported by the plain language of the Reinsurance Agreements.  Meanwhile, Cal-Regent retained all provisional commissions paid by Odyssey, including those that came due before the claimed breach, and those that were not impacted by the carry forward dispute.  Under these circumstances, the Court finds it appropriate to compensate Odyssey for the lost use of the funds at issue.  *See Kenneco*, 962 S.W.2d at 528.

As to the accrual period, "prejudgment interest accrues on the amount of the judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered."  Tex. Fin. Code § 304.104.

A demand for payment or assertion of a right to be paid constitutes notice of a claim for purposes of Texas's prejudgment interest statute.  *Robinson v. Brice*, 894 S.W.2d 525, 528 (Tex. App. 1995) (for purposes of prejudgment interest statute, "claim" means a "demand for compensation or an assertion of a right to be paid").  Moreover, "[a] claim need not demand an exact amount or list every element of damage."  *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 428 (Tex. App. 2006).

The record evidence shows that, on August 6, 2013, an Odyssey representative e-mailed the intermediary appointed under the Reinsurance Agreements disagreeing

with Cal-Regent's position as to the debit carry forward, requesting a revised calculation, requesting payment of all commission adjustments not affected by the debit carry forward, and reserving its right to pursue the disputed amount.  ECF No. 62-5 at 1. Thus, on August 6, 2013, Odyssey transmitted a written communication demanding payment and asserting its right to be paid.  That communication constituted written notice of Odyssey's claim for purposes of Texas's prejudgment interest statute.  *Snyder*, 191 S.W.3d at 428.  Therefore, prejudgment interest began to accrue 180 days later on February 2, 2014, and continued to accrue as simple interest at 5% until the day before this Court enters judgment.  *See* Tex. Fin. Code § 304.104.

### 2.    Attorney's Fees and Costs

Federal Rule of Civil Procedure 54 provides that "[a] claim for attorney's fees and related non-taxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial."  Fed. R. Civ. P. 54(d)(2)(A).

Texas Civil Practice and Remedies Code § 38.001(8) provides that "a person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8).  District courts in Texas have required parties to file Rule 54 motions to recover attorney's fees under that provision.  *See, e.g.*, *ABB, Inc. v. Pena*, No. CIV. A. L-10-83, 2011 WL 906651, at *4 (S.D. Tex. Mar. 15, 2011); *Hoffman v. L & M Arts*, No. 3:10-CV-0953-D, 2015 WL 1000838, at *3 (N.D. Tex. Mar. 6, 2015); *CSMG Techs., Inc. v. Allison*, No. 4:07-CV-0715, 2009 WL 2242351, at *3

14

(S.D. Tex. July 24, 2009).  This Court will do the same.  If Odyssey wishes to pursue attorney's fees and/or costs, it must file a timely Rule 54 motion.

## V.      CONCLUSION

For the foregoing reasons, Odyssey's Renewed Motion for Summary Judgment (ECF No. 102) is GRANTED.  There is no genuine dispute as to any material fact, and Odyssey is entitled as a matter of law to a declaratory judgment that Cal-Regent breached the Reinsurance Agreements, and judgment in the amount of $2,740,802.61, with prejudgment interest as provided herein.  The Clerk is directed to enter judgment in Odyssey's favor on Counts One and Two of the Complaint, and close this case.


SO ORDERED at Bridgeport, Connecticut this fourteenth day of October, 2015.


 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE